COMMERCIAL STRUCTURES V. LIBERTY 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-233-CV

COMMERCIAL STRUCTURES AND APPELLANT

INTERIORS, INC.

V.

LIBERTY EDUCATION MINISTRIES, INC. APPELLEES

D/B/A LIBERTY CHRISTIAN SCHOOL AND

JOHN FURST

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

This summary judgment appeal involves a dispute arising out of work performed under a construction contract.  In four issues, appellant Commercial Structures and Interiors, Inc. (CSI) contends that the trial court erred by denying its motion to strike appellees Liberty Education Ministries, Inc. d/b/a Liberty Christian School’s (Liberty) and John Furst’s proffered summary judgment evidence under rule 193.6, that the trial court erred by construing a Compromise Settlement Agreement and Mutual Release (Release) between CSI and Northstar Bank of Texas as a transfer and assignment of CSI’s cause of action against appellees, that the trial court erred by granting summary judgment dismissing CSI’s claims against Furst based on Liberty’s pleadings without any additional summary judgment proof from Furst, and that the trial court erred by sustaining appellees’ objections to CSI’s proferred summary judgment evidence.  
See 
Tex. R. Civ. P.
 193.6.  We reverse and remand the summary judgment in favor of Liberty but affirm the summary judgment in favor of Furst.

Background Facts

CSI, as a general contractor, and Liberty entered into a contract for construction of a school in Denton, Texas, on January 20, 2004.  Liberty leased the property on which the school was to be built from Furst.  CSI filed suit against appellees on July 12, 2004, alleging that Liberty terminated the contract after CSI had fully performed and that Liberty had failed and refused to pay CSI $522,178.57 that was due under the contract.  CSI also claimed to have perfected a mechanic’s lien on the property. 

Appellees answered by filing a general denial, verified special denial, and special exceptions.
(footnote: 1)  Six months later, Northstar Bank, who was not a party to the suit, filed an unsworn notice of transfer of causes of action under section 12.014 of the property code in which it claimed that CSI had transferred its “causes of action” against appellees pursuant to the Release.  
See
 
Tex. Prop. Code Ann.
 § 12.014 (Vernon 2004).
(footnote: 2)  CSI objected to the notice, contending, in part, that it had no intent to transfer its claims against appellees to Northstar Bank.  Appellees then filed an amended answer, which included a counterclaim requesting a declaratory judgment that Northstar Bank “is the legal owner of the claims . . . CSI[] has asserted . . . for payment of amounts claimed to be due under the construction contract.”
(footnote: 3)  Appellees claimed that pursuant to the Release, CSI had transferred and assigned all legal rights and causes of action against appellees to Northstar Bank and that Northstar Bank was the owner of all claims and causes of action with the right to compromise, settle, and dismiss those causes of action and release any and all liens on the real property that had been asserted by CSI.

Appellees also moved for summary judgment on all of CSI’s claims against them, alleging that (1) CSI lacked standing to bring suit on the claims against Liberty because it had already transferred and assigned them to Northstar Bank
(footnote: 4) and (2) Furst had no liability to CSI because he was not a party to the contract with Liberty and CSI did not allege any other theory under which he could be liable to it.  They also asked that the court grant them summary judgment on their counterclaim for declaratory relief.  As summary judgment proof, appellees attached to their motion the following:  (1) an affidavit from Brent Thornton, Senior Vice President of Northstar Bank, averring that CSI had assigned its claims against appellees to Northstar Bank in the Release; (2) the Release; (3) an affidavit from Rob Gentry, Chairman of the Board of Northstar Bank, averring that the bank, as the assignee of CSI’s accounts receivable, had agreed to settle CSI’s claims against Liberty for $200,000; and (4) a Compromise Settlement Agreement between Northstar Bank and Liberty, purporting to settle CSI’s claims against Liberty for $200,000.

On March 31, 2005, the trial court granted appellees’ motion for summary judgment, dismissing CSI’s claims against appellees and declaring that CSI had 

transferred all legal rights and causes of action asserted by CSI in this litigation to Northstar and Northstar is the owner of all claims asserted by CSI in this litigation with full right to compromise, settle and dismiss the same and release any and all liens upon real property asserted by CSI in this proceeding, including the claimed mechanic’s and materialmen’s liens upon the real property on which CSI seeks foreclosure in this proceeding. 

Analysis

In its first issue, CSI contends that the trial court erred by failing to strike the affidavits of two Northstar Bank employees that appellees attached as evidence to their summary judgment motion because appellees did not supplement their discovery responses with the names of those employees.  More specifically, CSI had propounded interrogatories to appellees, asking that appellees “identify all persons having knowledge, either directly or indirectly, of relevant facts and circumstances concerning the issues, claims, and defenses in this lawsuit, and for each person identified, describe the facts as authorized under rule 192.3(c) and (h)” and to “describe in detail any and all facts which would support your affirmative defenses in this action.”  In responding to the first interrogatory, appellees gave only the names of employees related to Liberty; they did not give the names of the Northstar Bank employees whose affidavits were attached as evidence to their summary judgment motion.  In addition, they did not answer the second interrogatory, but instead objected under rule 195.1, claiming that this question was an impermissible form of expert discovery.  
Tex. R. Civ. P.
 195.1.
  They also referred CSI to their response to its eleventh Request for Production “dated December 24, 2004.”  CSI claims that appellees did not produce any documents.
(footnote: 5)
 Rule 193.6 prohibits a party from offering evidence that was not disclosed “in a timely manner” in a discovery response “unless the court finds that:  (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.”  
Tex. R. Civ. P.
 193.6(a); 
Barr v. AAA Tex., LLC
, 167 S.W.3d 32, 37 (Tex. App.—Waco 2005, no pet.).  The party seeking to offer the evidence at issue has the burden to establish good cause or lack of unfair surprise or prejudice.  
Tex. R. Civ. P.
 193.6(b); 
Barr
, 167 S.W.3d at 37.

The parties dispute whether the rule 193.6 exclusionary rule applies to summary judgment proceedings.  There appears to be a split of authority among the courts of appeals on this issue.  
Compare Cunningham v. Columbia/St. David’s Healthcare Sys., L.P.
, 185 S.W.3d 7, 12-13 (Tex. App.—Austin 2005, no pet.), 
and F.W. Indus., Inc. v. McKeehan
, No. 11-04-00053-CV, 2005 WL 1639078, at *3 (Tex. App.—Eastland July 14, 2005, no pet.), 
with Johnson v. Fuselier
, 83 S.W.3d 892, 897 (Tex. App.—Texarkana 2002, no pet.), 
and
 
Alaniz v. Hoyt
, 105 S.W.3d 330, 340 (Tex. App.—Corpus Christi 2003, no pet.).  

However, even if the exclusionary rule applies here, appellees have shown that CSI was not unfairly surprised or prejudiced by the evidence.  Rule 193.5 requires that “[a]n amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response.  Except as otherwise provided by these rules, it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly.”  
Tex. R. Civ. P.
 193.5(b).  Northstar Bank filed its Notice of Transfer on January 25, 2005.  Appellees served their summary judgment motion and evidence on CSI on February 15, 2005, forty-one days before the hearing on the motion.  
Thus, CSI was aware of appellees’ intentions to rely on the affidavits as summary judgment evidence before the less than thirty-day untimely presumption in rule 193.5.  
Tex. R. Civ. P.
 193.5; 
see Wigfall v. Tex. Dep’t of Criminal Justice
, 137 S.W.3d 268, 273 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  We conclude that the trial court did not abuse its discretion by refusing to strike appellees’ summary judgment evidence because of Liberty’s failure to supplement its discovery responses.  
See
 
Tex. R. Civ. P.
 193.6(a)(2).

CSI also appears to argue that appellees were precluded from relying on the affidavits as summary judgment evidence because the trial court had signed an order to quash appellees’ Notice to Produce documents directed to Northstar Bank.  But appellees did not have to obtain the Release upon which they relied from the Notice to Produce.  Northstar Bank had already filed a “Notice of Transfer of Causes of Action Pursuant to Tex. Prop. Code Section 12.014,” with the Release attached. 
 Tex. Prop. Code Ann.
 § 12.014; 
see S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.
, 170 S.W.3d 814, 824-25 (Tex. App.—Corpus Christi 2005, pet. filed) (describing purpose of statute as “one of notice” and concluding that timing of assignment, i.e., whether before or after suit filed, is irrelevant).  
Thus, the trial court did not abuse its discretion by refusing to strike the affidavits on this basis either.  We overrule CSI’s first issue.

In its second issue, CSI contends that the trial court erred by construing the Release as a present transfer and assignment of CSI’s claims against appellees to Northstar Bank because the Release merely evidences a future intent to assign by executing additional documents, that the term “accounts receivable” was not intended to apply to any causes of action it had against appellees, and that CSI’s officers specifically informed Northstar Bank that CSI intended to file a civil action against appellees and that CSI would not assign it.

In construing a written assignment, an appellate court applies the rules of interpretation and construction applicable to contracts.  
MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.
, 179 S.W.3d 51, 58 (Tex. App.—San Antonio 2005, pet. denied).  Our primary goal is to ascertain the intent of the parties as it is expressed in the written assignment.  
See Forbau v. Aetna Life Ins. Co.
, 876 S.W.2d 132, 133 (Tex. 1994) (op. on reh’g); 
MG Bldg. Materials
, 179 S.W.3d at 58.  When an appellate court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the appellate court is obligated to interpret the contract as a matter of law.  
DeWitt County Elec. Coop., Inc. v. Parks
, 1 S.W.3d 96, 100 (Tex. 1999); 
Coker v. Coker
, 650 S.W.2d 391, 393 (Tex. 1983).  A contract is not ambiguous merely because parties to an agreement have different interpretations of a term or phrase.  
DeWitt, 
1 S.W.3d at 100
; Forbau
, 876 S.W.2d at 134.  A contract is ambiguous only if, after the application of established rules of construction, an agreement is still susceptible to more than one reasonable meaning.  
DeWitt, 
1 S.W.3d at 100; 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.
, 940 S.W.2d 587, 589 (Tex. 1996);  
Loaiza v. Loaiza
, 130 S.W.3d 894, 905 (Tex. App.—Fort Worth 2004, no pet.); 
Cano v. N. Tex. Nephrology Assocs., P.A., 
99 S.W.3d 330, 336 (Tex. App.—Fort Worth 2003, no pet.). 

In construing an unambiguous contract, a court should attempt to harmonize and give effect to all provisions so that none is rendered meaningless.  
MCI Telecomms. Corp. v. Tex. Util. Elec. Co.
, 995 S.W.2d 647, 650-51 (Tex. 1999); 
Coker
, 650 S.W.2d at 393. 

Thus, before we may look to any evidence about CSI’s intentions regarding the quoted language
, we must first determine from the face of the Release whether it indicates a present intention to assign and transfer all of CSI’s accounts receivable and, if so, whether the accrued but not filed causes of action against appellees are included within the term “accounts receivable.” 

An assignment generally transfers some right or interest from one person to another.  
MG Bldg. Materials
, 179 S.W.3d at 58. 
 “An assignment of a right is a manifestation of the assignor’s intention to transfer it by virtue of which the assignor’s right to performance by the obligor is extinguished . . . and the assignee acquires a right to such performance.”  
Restatement (Second) of Contracts
 § 317(1) (1981).  
An assignment is construed to have been made when the owner of a right manifests its intention to transfer the right to an assignee; an assignment is the 
act
 by which a transfer is effected.  
Miller v. Bank of the West
, No. 01-88-00195-CV, 1988 WL 88320, at *2 (Tex. App.—Houston [1st Dist.] Aug. 25, 1988, no writ) (not designated for publication). 

CSI and the bank entered into the Release on May 27, 2004, before CSI filed its suit against appellees.  At that time, as stated in the Background section of the Release, CSI and other entities associated with CSI (together with CSI, the West Entities) were indebted to Northstar Bank under promissory notes that were in default.  CSI and the West Entities entered into the Release to avoid foreclosure on property that secured some of the notes.

The first paragraph of the Release provides as follows:

The West Entities 
agree to convey or cause to be conveyed
 to [Northstar] Bank absolutely and free of any right of redemption or any other right or interest of the West Entities . . . all of the land situated in Denton County, Texas, described in the Schedule ‘A,’ attached hereto . . . .  Further, CSI 
agrees to assign
 to the Bank all of its right, title and interest in and to all of its accounts receivable and all rights to payment of any kind.  [Emphasis added.] 

The parties’ use of the terms “agree to convey or cause to be conveyed” in the first sentence of this paragraph indicates that additional instruments may have been necessary to convey the real property described in the Release.  The second sentence contains the same initial phrase, “agrees to assign,” but does not contain the “cause to be conveyed” language that more clearly reinforces the conclusion that the parties intended to execute additional documents.  However, the phrases “agree to convey” and “agrees to assign” by themselves indicate a future, or prospective, intent to convey and assign rather than a present intention.  
See Chambers County v. TSP Dev., Ltd.
, 63 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); 
Seelbach v. Clubb
, 7 S.W.3d 749, 756 (Tex. App.—Texarkana 1999, pet. denied); 
see also Allodial Ltd. P’ship v. N. Tex. Tollway Auth.
, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied) (holding that provision indicating that party “shall assign over to Allodial all rights” due from causes of action did not effect a present assignment of those rights).

The second paragraph of the Release, entitled Consideration, begins, “Subject to the satisfaction by the West Entities of the conditions contained herein, the Bank agrees to accept the conveyance of the Properties in full, final and complete settlement of any and all claims relating to personal liability of the West Entities with respect to” their indebtedness to the bank.  Additionally, another provision of the Release states that “[t]he 
transactions
 contemplated by this agreement 
will be consummated
 on or before 5:00 P.M. on Thursday, May 27, 2004.”  That provision is followed by a section entitled Conveyance Documents, which provides that at the closing, the West Entities “
will
 deliver or cause to be delivered” a special warranty deed for the real property referenced above, an assignment of life insurance policies in a form attached to the Release, a notice letter to CSI’s account debtors,
(footnote: 6) and “such other conveyance documents as might be reasonably requested by [Northstar] Bank to transfer absolute ownership of all of the property interests” contemplated in the Release.  [Emphasis added.]  Thus, other provisions of the Release appear to contemplate a closing at which the parties would consummate all of the transactions agreed to in the Release, including the assignment of CSI’s accounts receivable to Northstar Bank.

We hold that the language in the Release unambiguously
(footnote: 7) evidences an intent to assign CSI’s accounts receivable to Northstar Bank in the future and does not, standing alone, effect a present transfer of the accounts receivable to the bank.  Appellees did not provide the trial court with any evidence that the parties consummated the transactions contemplated in the Release, nor did they plead or prove an equitable assignment;
(footnote: 8) thus, there is no evidence that CSI ever completed the assignment of its accounts receivable to Northstar Bank that it agreed to in paragraph 1 of the Release.  Because there is no evidence in the summary judgment record that the assignment was ever consummated, the trial court erred by granting summary judgment in favor of Liberty as to CSI’s claims against it and as to appellees’ claims for declaratory judgment relief against CSI.  We sustain CSI’s second issue.

In its third issue, CSI contends that the trial court erred by dismissing its claims against Furst because he did not present any summary judgment proof.  Appellee contends that such proof was not necessary because Furst’s motion for summary judgment was based on CSI’s pleadings and the judicial admissions contained in those pleadings.  

CSI pled that it entered into the contract with Liberty and that Liberty leased the property upon which the school was to be constructed from Furst.  It did not allege that it contracted with Furst or that he was a third party beneficiary of the contract.  
Thus, the only possible theory of liability against Furst was in connection with the mechanic’s and materialmen’s lien that CSI claimed to have perfected against the property he owned.

“Our courts have long held that a mechanic’s and materialmen’s lien attaches to the interest of the person contracting for construction.”  
Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractors, Inc.
, 576 S.W.2d 794, 805 (Tex. 1978) (op. on reh’g).  Therefore, if a lessee enters into a construction contract, any resulting mechanic’s lien attaches only to the leasehold interest.  
Id
.  Unless the owner of the land is also a party to the construction contract, no mechanic’s lien attaches to the freehold.  
2811 Assocs., Ltd. v. Metroplex Lighting & Elec.
, 765 S.W.2d 851, 853 (Tex. App.—Dallas 1989, writ denied).

“Assertions of fact, not [pled] in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.”  
Holy Cross Church of God in Christ v. Wolf
, 44 S.W.3d 562, 568 (Tex. 2001).  Although pleadings generally do not constitute summary judgment proof, if a plaintiff’s pleadings contain judicial admissions negating a cause of action, summary judgment may properly be granted on the basis of the pleadings.  
See Brooks v. Ctr. for Healthcare Servs.
, 981 S.W.2d 279, 283 (Tex. App.—San Antonio 1998, no pet.).  CSI’s pleadings do not plead any theory upon which CSI could recover from Furst.  
Thus, the trial court did not err by granting summary judgment in favor of Furst based on the judicial admissions in CSI’s pleadings.  We overrule CSI’s third issue.

Conclusion

Having sustained CSI’s second issue, we reverse the summary judgment in favor of Liberty and remand the case for further proceedings on CSI’s claims against Liberty.  But having overruled CSI’s third issue, we affirm the trial court’s summary judgment in favor of Furst.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: April 20, 2006

FOOTNOTES
1:
Appellees disputed that CSI had fully performed under the contract but did not claim that Liberty had made any payments under the contract.

2:
Section 12.014 allows an assignee of a cause of action to file a sworn notice of the assignment in a pending suit so that the assignment will be binding upon the other parties to the suit.  
See id.; Baroid Equip., Inc. v. Odeco Drilling, Inc.
, 184 S.W.3d 1, 19 (Tex. App.—Houston [1st Dist.] 2005, pet. filed).

3:
Appellees also raised a plea in avoidance, claiming that because CSI had assigned its claims against appellees to Northstar Bank, it had no standing to pursue the suit.

4:
After making a valid assignment, an assignor loses all control over the chose and can do nothing to defeat the rights of the assignee.  
Johnson v. Structured Asset Servs., LLC
, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.).  An assignor of a cause of action who has not retained some right or interest in the cause of action is precluded from bringing suit.  
River Consulting, Inc. v. Sullivan
, 848 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist.] 1992, writ denied), 
disapproved of on other grounds by Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.
, 960 S.W.2d 41, 46 (Tex. 1998).

5:
Appellees do not dispute CSI’s contention that they failed to produce documents in response to CSI’s eleventh request for production.

6:
The Release states that the form of this letter is attached as Exhibit F, but the copy of the Release in the record does not contain such an exhibit or letter form as an attachment.

7:
Because we have concluded that the language in the Release is unambiguous, we also overrule 
CSI’s fourth issue alleging that the trial court erred by sustaining appellees’ objections to CSI’s proffered summary judgment evidence that CSI did not intend for the accrued but unfiled causes of action against appellees to be assigned and transferred to Northstar Bank in the Release.  Evidence that CSI did not intend for the causes of action against appellees to be assigned to Northstar Bank is inadmissible parol evidence; thus, the trial court did not err by granting appellees’ objections to that evidence on those grounds.  
See Nat’l Union Fire Ins. Co. of Pittsburgh, P.A. v. CBI Indus., Inc.
, 907 S.W.2d 517, 520 (Tex. 1995).

8:
“To be an equitable assignment, the agreement must evidence an intent to transfer the interest 
and the transferor must relinquish control over the interest
.  An equitable assignment can be effected only by a surrender of control over the funds or property assigned.”  
Pape Equip. Co. v. I.C.S., Inc.
, 737 S.W.2d 397, 402 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.) (emphasis added) (citations omitted).