

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-447-CV

JOYCE WEST, AS TRUSTEE              APPELLANTS
FOR THE WEST FAMILY TRUST,
COMMERCIAL STRUCTURES
AND INTERIORS, INC., AND
LLOYD WARD

V.

NORTHSTAR FINANCIAL              APPELLEES
CORPORATION D/B/A
NORTHSTAR BANK OF TEXAS,
TONY R. CLARK, EDMOND S.
BRIGHT, MYRA CROWNOVER,
ROBERT W. GENTRY, KENT W.
KEY, JOSEPH S. MULROY,
PATRICK D. O'BRIEN, RONALD
REINKE, RONALD F. SHERMAN,
AND RICHARD E. SMITH

------------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

---

[1] *See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

In four issues, Appellants Joyce West, as Trustee for the West Family Trust, Commercial Structures and Interiors, Inc. ("CSI"), and Lloyd Ward appeal (1) the trial court's order granting a motion for partial summary judgment in favor of Appellees Northstar Financial Corporation d/b/a Northstar Bank of Texas ("Northstar") and Tony R. Clark, Edmond S. Bright, Myra Crownover, Robert W. Gentry, Kent W. Key, Joseph S. Mulroy, Patrick D. O'Brien, Ronald Reinke, Ronald F. Sherman, and Richard E. Smith ("Northstar Officers and Directors") and (2) the trial court's final judgment granting in full a second motion for summary judgment and awarding sanctions against Ward in favor of Northstar. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Joyce and John Richard West were officers, directors, or shareholders of CSI; Southfork Land LLC ("Southfork"); Valley Business Park, Ltd. ("VBP"); JRW Holdings, Inc. ("JRW"); and Dakota Partners Ltd.("Dakota") (collectively, the "West entities"). In 2002 and 2003, CSI, JRW, and VBP acquired financing through several loans from Northstar: CSI entered into a loan agreement with Northstar for a revolving line of credit up to $1,000,000 and executed a promissory note payable to Northstar in the amount of $1,000,000; JRW executed a promissory note payable to Northstar in the amount of $704,600; and VBP executed a promissory note payable to Northstar in the amount of $550,000.

2

Northstar secured each promissory note with multiple instruments of collateral. To secure the CSI promissory note, CSI granted Northstar a security interest in, among other things, its accounts receivable, rights to payment of any kind, and proceeds; John Richard West executed a Guaranty Agreement in favor of Northstar guaranteeing CSI's indebtedness under the promissory note; and Dakota executed a Guaranty Agreement in favor of Northstar guaranteeing CSI's indebtedness. To secure the JRW promissory note, Southfork executed a deed of trust, security agreement, and assignment of rents, leases, incomes, and agreements in favor of Northstar to three tracts of land, and John Richard West, Dakota, CSI, and Southfork each executed a Guaranty Agreement in favor of Northstar guaranteeing JRW's indebtedness. To secure VBP's promissory note, VBP executed a deed of trust, security agreement, and assignment of rents, leases, incomes, and agreements in favor of Northstar to a single tract of land; John Richard West executed a Guaranty Agreement in favor of Northstar guaranteeing VBP's indebtedness; and both Joyce and John Richard West executed an "Amended and Restated Assignment of Life Insurance Policy" assigning to Northstar an Allmerica life insurance policy in the amount of $200,000 on the life of John Richard West. The deed of trust also secured the JRW and CSI promissory notes, and the assignment of the Allmerica insurance policy also secured all of the indebtedness owed by JRW and CSI to Northstar.

The CSI promissory note, the JRW promissory note, and the VBP promissory note each fell into default. Northstar had also agreed to cover several overdrafts made by CSI in the amounts of $36,852, $341,375, and $5,758 and an overdraft made by JRW in the amount of $152,845. As of May 27, 2004, the West entities' indebtedness on the promissory notes, including interest on the principal indebtedness and the secured amounts representing the overdrafts, totaled approximately $2,396,137.

On or about May 27, 2004, Northstar entered into a "Compromise Settlement Agreement and Mutual Release" (the "Agreement") with the West entities.[2] Under the Agreement, Northstar released the West entities from personal liability under the loans for the indebtedness resulting from the CSI, JRW, and VBP promissory notes. The Agreement provided, however, that the indebtedness and the collateral securing the debt would "remain in full force and effect," thus surviving the release of the West entities from personal liability. In exchange for agreeing to not pursue the West entities to satisfy the indebtedness, Northstar received deeds in lieu of foreclosure conveying real estate that was the subject of the deeds of trust used as collateral to secure the JRW and VBP promissory notes; an assignment of all of CSI's accounts receivable; a collateral assignment of a Transamerica life insurance policy in the amount of $750,000 for a period of one year from May 27, 2004; and a release from

---

[2] The West Family Trust was not a party to the Agreement.

all past, present, and future claims by the West entities based on tort, contract, or any other theory of recovery.

On July 12, 2004, CSI sued Liberty Education Ministries, Inc. d/b/a Liberty Christian School ("Liberty"), alleging that Liberty had terminated a contract that it had entered into with CSI after CSI had fully performed under the contract and that Liberty had failed to pay CSI money owed.  *See Commercial Structures and Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 829 (Tex. App.—Fort Worth 2006, no pet.).  The trial court granted Liberty's motion for summary judgment, dismissing CSI's claims against Liberty and declaring that CSI had transferred all legal rights and causes of action asserted by CSI in the litigation to Northstar and that Northstar was the owner of the claims asserted by CSI in the litigation.  *Id*. at 830.  CSI appealed and argued in part that "the trial court erred by construing the [Agreement] as a present transfer and assignment of CSI's claims against [Liberty] to [Northstar] because the [Agreement] merely evidence[d] a future intent to assign by executing additional documents."  *Id*. at 832.  This court agreed, reasoning in part as follows:

> We hold that the language in the [Agreement] unambiguously evidences an intent to assign CSI's accounts receivable to [Northstar] in the future and does not, standing alone, effect a present transfer of the accounts receivable to the bank.  Appellees did not provide the trial court with any evidence that the parties consummated the transactions contemplated in the [Agreement], nor did they plead or prove an equitable assignment; thus, there is no evidence that CSI ever completed the assignment of its accounts receivable to [Northstar] that it agreed to in . . . the [Agreement].  Because there is no evidence in

5

the summary judgment record that the assignment was ever consummated, the trial court erred by granting summary judgment in favor of Liberty as to CSI's claims against it and as to appellees' claims for declaratory judgment relief against CSI. We sustain CSI's second issue.

*Id*. at 834 (footnotes omitted).

John Richard West died in late April 2006. On May 24, 2006, Joyce West, individually and as Trustee for the West Family Trust, sued Northstar and the Northstar Officers and Directors, alleging claims for breach of contract and tortious interference with contract based on Northstar's alleged failure and refusal to execute (1) a release of the 2003 collateral assignment upon the Allmerica insurance policy and (2) a release of the Transamerica insurance policy assignment, which expired by its own terms in May 2005. On May 31, 2006, Northstar executed a release of the Transamerica insurance policy. In July 2006, West filed a supplemental petition claiming that Northstar was improperly withholding CSI's accounts receivable and alleging claims for intentional infliction of emotional distress, fraud, conspiracy to commit fraud, conspiracy to tortiously interfere with contract, tortious interference with contract, and negligence.

Also in July 2006, the West entities filed a "Plea in Intervention," alleging claims against Northstar and the Northstar Officers and Directors for fraud, conspiracy to tortiously interfere with business relations, conspiracy to convert

6

accounts receivable, conversion, and negligent misrepresentation.[3] The Intervenors claimed that pursuant to the *Commercial Structures and Interiors, Inc.* case, "the Fort Worth Court of Appeals held that CSI's accounts receivable were not assigned to Northstar" and that Northstar was wrongfully holding CSI's accounts receivable.

After filing counterclaims for breach of contract and for declaratory relief related to the Allmerica insurance policy and CSI accounts receivable, Northstar and the Northstar Officers and Directors filed a traditional and no-evidence motion for partial summary judgment; Northstar and the Northstar Officers and Directors moved for summary judgment on all of West's and the Intervenors' affirmative claims, and Northstar moved for summary judgment on its claim that it is entitled to the proceeds of the Allmerica insurance policy. After Northstar filed the motion for partial summary judgment, West and the Intervenors filed a first amended petition. As to the Northstar Officers and Directors, the trial court granted the motion for summary judgment in its entirety, dismissing all claims against them. As to Northstar, the trial court granted its motion for summary judgment on West's and the Intervenors' claims of negligence, gross negligence, intentional infliction of emotional distress, and conspiracy. The trial court denied the remainder of Northstar's motion for summary judgment.

---

[3] Unlike subsequent filings by the Intervenors, this filing does not name Dakota as an intervenor.

Northstar filed motions for rule 215, rule 13, and civil practice and remedies code section 10 sanctions against Ward, counsel for West and the Intervenors, which the trial court granted on October 15, 2007. West and the Intervenors filed their second and third amended petitions before all of the Intervenors except CSI nonsuited their claims against Northstar, and Northstar amended its counterclaims as to the declaratory relief it sought. Northstar thereafter filed a traditional and no-evidence motion for summary judgment on West's and the Intervenors' claims and on Northstar's claims for breach of contract and for declaratory relief.[4] The trial court granted the motion in full; among other things, it dismissed all of the West's and all of the Intervenors' claims; declared CSI, JRW, and VBP in default of the CSI, JRW, and VBP promissory notes; declared the Agreement valid and enforceable; declared that the indebtedness under the promissory notes survived the Agreement's execution; declared that the indebtedness as of January 23, 2008, including interest and overdrafts, was $2,912,853 and that the indebtedness as of May 27, 2004,

---

[4] Because the motion for summary judgment contained in the record bears a file mark that is dated after the trial court signed its order granting the motion for summary judgment, we abated the appeal for the trial court to conduct a hearing to determine what constitutes an accurate copy of the motion for summary judgment filed on February 15, 2008, the date Northstar claims to have filed the motion. *See* Tex. R. App. P. 34.5(e). The trial court entered a finding of fact that the copy of the motion for summary judgment admitted as Exhibit "1" at the abatement hearing, now included as a supplement to the record, constitutes an accurate copy of the motion for summary judgment filed on February 15, 2008. *See Nguyen v. Dallas Morning News, L.P.*, No. 02-06-00298-CV, 2008 WL 2511183, at *3 (Tex. App.—Fort Worth June 19, 2008, no pet.) (mem. op.) ("A document is 'filed' when it is delivered or tendered to, or otherwise put under the custody or control of, the court's clerk. This is true regardless of whether the document is file-stamped.").

including interest and overdrafts, was $2,396,137; declared that the value of the real property conveyed in lieu of foreclosure was $1,205,792; declared Northstar the owner of CSI's accounts receivable; and declared Northstar the owner of the proceeds to the Allmerican insurance policy. The trial court also included in the final judgment its ruling awarding sanctions against Ward in the total amount of $68,602. This appeal followed.

### III. NORTHSTAR'S MOTION TO SHOW AUTHORITY

Before addressing Appellants' four issues, we must address Northstar's motion pursuant to rule of civil procedure 12 to require Appellants' counsel, Ward, to show authority to prosecute this appeal. Northstar contends that Ward lacks authority to represent West and CSI on appeal because he withdrew as counsel for West in April 2008, because the notice of appeal is ambiguous with respect to the identity of the parties pursuing the appeal, and because of a potential conflict of interest between Ward and West. Northstar also requests that we dismiss the appeal of West and CSI for want of jurisdiction. We abated the appeal to allow the trial court to conduct a hearing on the motion. The appeal being reinstated, and having reviewed the supplemental reporter's record of the hearing on abatement and relevant parts of the record, we deny Northstar's motion requesting that the appeal be dismissed for want of jurisdiction.[5]

---

[5] To the extent Northstar seeks further relief by way of its motion to show authority, it is denied.

9

## IV. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Mann Frankfort*, 289 S.W.3d 848.

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

10

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT—NORTHSTAR OFFICERS AND DIRECTORS

In their first issue, Appellants argue that the trial court erred by granting the motion for partial summary judgment in favor of the Northstar Officers and Directors on claims that were not addressed in the motion for summary judgment. Specifically, Appellants contend that West filed her first amended original petition after Northstar and the Northstar Officers and Directors filed their motion for partial summary judgment; that the amended petition asserted causes of action for fraud in the inducement, negligent misrepresentation, tortious interference, fraud, and fraudulent misrepresentation that were not previously pleaded in the original and supplemental petitions; and, consequently, that the trial court granted the motion for partial summary judgment in favor of the Northstar Officers and Directors on claims that were not addressed by the motion for partial summary judgment.

Generally, a movant who does not amend or supplement its pending motion for summary judgment to address newly added claims is not entitled to summary judgment on those claims. *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a case, the portion of the summary judgment purporting to be final must generally be reversed because the judgment grants more relief than requested in the motion. *See id.* Exceptions apply to this rule, however, when a previously filed no-evidence motion for summary judgment already challenges an essential element of a later-added claim, when the

11

movant has conclusively proved or disproved a matter that would also preclude the unaddressed claim as a matter of law, or when the unaddressed claim is derivative of the addressed claim and the movant proved its entitlement to summary judgment on that addressed claim. *Wilson v. Davis*, No. 01-06-00424-CV, 2009 WL 2526439, at *11 & n.13 (Tex. App.—Houston [1st Dist.] Aug. 14, 2009, no pet.); *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 436–37 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Hayes v. Vista Host, Inc.*, No. 03-08-00053-CV, 2009 WL 722288, at *5 (Tex. App.—Austin Mar. 20, 2009, no pet.) (mem. op.).

Here, the Northstar Officers and Directors moved for summary judgment on "Plaintiff/Intervenors[']" claims for breach of contract, tortious interference, fraud, negligence, gross negligence, negligent misrepresentation, conversion, accounting, intentional infliction of emotional distress, and conspiracy. West, as the Trustee for the West Family Trust, was the "Plaintiff" identified in the motion, and the West entities were the "Intervenors" identified in the motion. According to the motion, *"all of these claims should be dismissed* on summary judgment against all Defendants." [Emphasis added.] Contrary to Appellants' arguments, the motion sought summary judgment on West's claims for negligent misrepresentation, tortious interference, and fraud.

Fraudulent inducement is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798–99

12

(Tex. 2001). Other than the pleading argument, which we already addressed, West does not challenge the trial court's order granting the motion for partial summary judgment in favor of the Northstar Officers and Directors on her claims for fraud. Therefore, because it is undisputed that the Northstar Officers and Directors conclusively disproved West's fraud claims, West cannot establish her fraudulent inducement claim as a matter of law. *See id.* (requiring that elements of fraud be established in fraudulent inducement claim); *Wilson*, 2009 WL 2526439, at *11. The trial court did not err by granting the Northstar Officers and Directors' motion for partial summary judgment on West's claims for fraudulent inducement.

West made no distinction between her claims for fraudulent misrepresentation and fraud; she grouped the identical claims together, alleging identical facts in support of each claim.[6] Also, like her fraudulent inducement claim, West's fraudulent misrepresentation claim fails as a matter of law because it is undisputed that the Northstar Officers and Directors conclusively disproved her fraud claims, and her fraudulent misrepresentation claim shares elements with her fraud claim. *Compare Baribeau v. Gustafson*, 107 S.W.3d 52, 58 (Tex. App.—San Antonio 2003 (Tex. App.—San Antonio 2003, pet. denied) (listing elements of common law fraudulent misrepresentation), *cert. denied*, 543 U.S. 871 (2004), *with DiBello v. Charlie Thomas Ford, Ltd.*, 288 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2009, no

_____

[6] West asserted three "counts" of "Fraud and Fraudulent Misrepresentation" in the first amended original petition.

13

pet.) (listing elements of common law fraud); *see Wilson*, 2009 WL 2526439, at *11.

The trial court did not err by granting the Northstar Officers and Directors' motion for partial summary judgment on West's claims for fraudulent misrepresentation. We overrule Appellants' first issue.

## VI. INDEBTEDNESS AND CSI ACCOUNTS RECEIVABLE

In their second issue, Appellants argue that the trial court erred by granting Northstar's motion for summary judgment on its requests for declarations that the indebtedness under the promissory notes survived the Agreement's execution and that Northstar is the owner of CSI's accounts receivable. Under various theories, Appellants contend that no indebtedness resulting from the CSI, JRW, and VBP promissory notes remained after the Agreement's execution because the Agreement constituted a full settlement of all claims relating to the indebtedness and because Northstar is not the owner of the CSI accounts receivable.

### A.   Contract Construction

Our primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Id*. We presume that the parties to the contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex.

14

App.—Houston [14th Dist.] 2006, pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121. In construing a contract, we may not rewrite it nor add to its language, and we must weigh that parties to a contract

> are considered masters of their own choices. They are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner they choose.

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.).

### B. The Agreement

Relevant provisions of the Agreement provide as follows:

## I.
## BACKGROUND

WHEREAS, VBP executed that certain [p]romissory [n]ote dated July 17, 2003 in the original principal amount of $550,000.00 and payable to the order of [Northstar] . . . ;

WHEREAS, JRW executed that certain promissory note dated January 24, 2003, in the principal amount of $704,600.00 and payable to the order of [Northstar] . . . ;

WHEREAS, CSI executed that certain promissory note dated December 13, 2002, in the principal amount of $1,000,000.00 and payable to the order of [Northstar] . . . ;

WHEREAS, the VBP Note, the JRW Note and the CSI Note (hereinafter, the "Indebtedness") is secured by certain real property situated in Denton County, Texas . . . (the "Property") . . . ;

WHEREAS, the Indebtedness is guaranteed in whole or in part by VBP, the Wests [John Richard West and Joyce West], Dakota, JRW, CSI, and Southfork . . . ;

. . . .

WHEREAS, the Indebtedness is in default and the Property has been posted for foreclosure sale on June 1, 2004;

. . . .

**II.**
**AGREEMENT**

1.      Conveyances to [Northstar]:  *The West Entities agree to convey or cause to be conveyed to [Northstar] . . . all of the land situated in Denton County, Texas, described in the Schedule "A," attached hereto . . . .*[7]  *Further, CSI agrees to assign to [Northstar] all of its right, title and interest in and to all of its accounts receivable and all rights to payment of any kind.*

2.      Consideration.  *Subject to the satisfaction by the West Entities of the conditions contained herein, [Northstar] agrees to accept the conveyance of the Properties in full, final and complete settlement of any and all claims relating to personal liability of the West Entities with respect to the Indebtedness.*  The West Entities agree to convey the Properties to [Northstar] in consideration of such accord and satisfaction. The West Entities jointly and severally represent that each of them has made an independent determination of the fair market value of the Properties and as a result thereof, each of them has concluded that:  *(a) the amount of the Indebtedness substantially exceeds the fair market value of the Properties*; (b) the Properties are unable to generate sufficient income to repay the Indebtedness in

---

[7] The properties identified in Schedule "A" include several tracts of real estate that were the subject of the deeds of trust used as collateral to secure the JRW and VBP promissory notes.

16

accordance with the terms of the Loan Documents; and (c) the consideration to be received by the West Entities pursuant to this agreement represents the payment by [Northstar] of full, fair and adequate consideration to the West Entities.

3.    Closing Date.  The transactions contemplated by this agreement will be consummated on or before 5:00 P.M. on Thursday, May 27, 2004 (the "Closing Date") . . . .

4.    Conveyance Documents.  On the Closing Date, the West Entities will deliver or cause to be delivered to [Northstar] the following items . . . : *(a) Special Warranty Deed-in-Lieu of Foreclosure for the Properties . . . ; (b) an Assignment of the Life Insurance Policies, specifically, the Transamerica Life Insurance Company Policy No. 4178765 in the amount of $750,000.00 on the life of John Richard West for a period of one (1) year from the date hereof . . . ; (c) the Notice Letter to the account debtors of CSI attached hereto as Schedule "F" . . . .*

5.    Nonrecourse Liability of Indebtedness.  *The West Entities are hereby released from all personal liability under the Indebtedness to the extent such release does not operate to invalidate the liens created of the Deed of Trust in the collateral described therein.  It is the intent of the Parties that the Indebtedness shall remain in full force and effect and fully secured by the collateral identified in the Loan Documents. . . .*

6.    Release of [Northstar].  Effective on the Closing Date and only if the transactions contemplated by this agreement are consummated, the West Entities . . . shall completely and generally release . . . and forever discharge [Northstar] . . . of and from any and all past, present, and future claims, [and] . . . causes of actions . . . whatsoever based on tort, contract, or any other theory of recovery . . . which any West [Entities] ever jointly or individually had, . . . or [will] have against [Northstar] . . . .

        . . . .

11.   Representation of Comprehension of Documents:  In entering into this Agreement, each Party represents that it has relied upon the legal advice of an attorney who is the attorney of his or its own choice, and that the terms of the Agreement have been completely read by the

17

Party, and that the Party fully understands and voluntarily accepts the terms of this Agreement. . . .

. . . .

15.  Entire Agreement:  This Agreement contains the entire agreement between [Northstar] and the West Entities with regard to the matters set forth in this Agreement.

a.  **THERE ARE NO OTHER PROMISES, UNDERSTANDINGS, REPRESENTATIONS, WARRANTIES, COVENANTS, OR AGREEMENTS, VERBAL OR OTHERWISE, IN RELATION THERETO BETWEEN THE BANK AND THE WEST ENTITIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.**

[Emphasis added.]

**C.  Indebtedness**

The plain and unambiguous language of the Agreement demonstrates that in exchange for deeds in lieu of foreclosure, an assignment of all of CSI's accounts receivable, a collateral assignment of the Transamerica life insurance policy, and a release from all claims by the West entities, Northstar agreed to release the West entities from *personal liability* under the loans for the indebtedness.  Contrary to Appellants' interpretation of the Agreement, Northstar's release of the West entities from personal liability for the indebtedness did not extinguish or release the *entirety* of the indebtedness under the promissory notes because (1) that is not what the Agreement states and (2) the parties to the Agreement specifically intended that the indebtedness "remain in full force and effect and fully secured by the collateral."  By releasing the West entities from only personal liability for the indebtedness, Northstar

18

agreed that, with the exception of the assets conveyed in the Agreement, it could not reach any of the West entities' assets to satisfy the indebtedness, which remained in full force and effect and fully secured by the collateral. In other words, by agreeing to not pursue the West entities to satisfy the indebtedness ("Nonrecourse Liability"), Northstar limited the indebtedness remaining after accepting the assets conveyed in the Agreement to the value of the collateral securing the debt. Accordingly, the Agreement did not constitute a full and final settlement of the entirety of the indebtedness under the CSI, JRW, and VBP promissory notes. Rather, under the terms of the Agreement, the indebtedness resulting from the promissory notes survived the Agreement's execution.

To the extent Appellants mean to argue that no indebtedness remained after the Agreement's execution because the value of the properties conveyed in lieu of foreclosure *exceeded* the total indebtedness (thus challenging the declaration that the value of the properties conveyed in lieu of foreclosure was $1,205,792), this argument was not asserted by Appellants in response to Northstar's motion for summary judgment as an issue expressly precluding summary judgment.[8] Thus, Appellants may not raise this argument for the first time on appeal as a reason to reverse the summary judgment. *See* Tex. R. Civ. P. 166a(c) (providing that issues not expressly presented to the trial court by written motion, answer, or other

---

[8] Appellants only argued that the Agreement "was a complete release of all indebtedness of the Plaintiff and Intervenors from any allegations of debt owed to the Bank."

19

response *shall not* be considered on appeal as grounds for reversal); Tex. R. App. P. 33.1 (requiring that as a prerequisite for presenting a complaint for appellate review, record must show that the complaint was made to trial court by timely request, objection, or motion); *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993); *City of Houston*, 589 S.W.2d at 677–78.

Even if Appellants had raised this argument in the trial court, it fails. First, the parties expressly agreed that "the amount of the Indebtedness substantially exceeds the fair market value of the Properties [the land conveyed in lieu of foreclosure]." Thus, Appellants' argument is foreclosed by the unambiguous terms of the Agreement. Further, Northstar included as part of its summary judgment evidence the affidavits of Judy Leveridge, Northstar's Executive Vice President and Chief Risk Officer, and Ross Helbing, a qualified appraiser of improved and unimproved commercial property. Helbing opined in his affidavit that as of May 27, 2004, the fair market value of the properties transferred to Northstar in lieu of foreclosure totaled $3,432,000. Leveridge stated in her affidavit that "[t]wo of the properties subject to the deeds in lieu of foreclosure had first liens which Northstar was required to pay off."[9] These amounts were $2,051,389 and $174,819. The total equity Northstar received from the properties transferred in lieu of foreclosure thus totaled $1,205,792

---

[9] Northstar confirmed at oral argument that it had paid off the liens.

(fair market value less liens).  Applied to the indebtedness as of May 27, 2004 ($2,396,137), debt in the amount of $1,190,345 remained.[10]

Appellants additionally argue that the Agreement eliminated the indebtedness and that there are no amounts due and owing because a 1099 issued to VBP for tax year 2004 shows figures inconsistent with those in the final judgment, property code section 51.006 somehow applies to their benefit, and the doctrine of "merger" operated to eliminate the indebtedness.  Like the previous argument, none of these arguments were asserted in Appellants' response to Northstar's motion for summary judgment.[11]  Accordingly, they may not be urged for the first time on appeal as grounds to reverse the summary judgment.  *See* Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1; *McConnell*, 858 S.W.2d at 341.  We overrule this part of Appellants' second issue.

### D.    CSI's Accounts Receivable

In *Commercial Structures and Interiors*, this court held that the Agreement evidenced an intent to assign CSI's accounts receivable to Northstar but that the

---

[10] The deficiency is even higher when applying the figures to the indebtedness as of January 23, 2008, which was $2,912,853.

[11] As candidly pointed out by Northstar, Appellants mentioned in their response to Northstar's motion for summary judgment that Northstar had "acknowledged receiving value in excess of the sums indicated in the recitals to the agreement as evidenced by a IRS form 1099," but this statement was made in the context of addressing the consideration given in the Agreement, and Appellants did not argue, as they do here on appeal, that the value of the properties exceeded the indebtedness.

21

summary judgment record did not demonstrate that the assignment of CSI's accounts receivable was ever consummated. 192 S.W.3d at 834. In addition to the plain language of the Agreement, the court arrived at this conclusion primarily by observing that the portion of the Agreement entitled "Conveyance Documents" required the West entities to deliver a notice letter to CSI's account debtors evidencing the CSI accounts receivable "conveyance," and the court stated in a footnote immediately following this observation that "[t]he [Agreement] states that the form of the letter is attached as [Schedule] F, but the copy of the [Agreement] in the record does not contain such an exhibit or letter form as an attachment." *Id*. Thus, there was no evidence that CSI had completed the assignment of its accounts receivable to Northstar.

Unlike the summary judgment record in *Commercial Structures and Interiors* that was missing the evidence that CSI had assigned its accounts receivable to Northstar, the summary judgment record in this appeal does contain the notice letter intended for CSI's account debtors that is attached to the Agreement as Schedule F. The letter is signed by John Richard West and states as follows:

> This letter is to inform you that *Commercial Structures and Interiors, Inc. has transferred all of its right, title and interest in and to all accounts receivable and future payments due to Commercial Structures and Interiors, Inc. by your company to Northstar Bank of Texas*[.] Accordingly, you are hereby directed to forward all future payments due to Commercial Structures and Interiors, Inc. under our contract with you, directly to Northstar Bank of Texas, at the address provided below. [Emphasis added.]

22

Accordingly, in light of (a) the Agreement's unambiguous language providing that "CSI agrees to assign to [Northstar] all of its right, title and interest in and to all of its accounts receivable and all rights to payment of any kind" and (b) the letter attached to the Agreement as Schedule F providing that "Commercial Structures and Interiors, Inc. *has transferred* all of its right, title and interest in and to all accounts receivable and future payments due to Commercial Structures and Interiors, Inc. by your company to Northstar," Northstar met its summary judgment burden to show that it is the owner of CSI's accounts receivable. [Emphasis added.]

Appellants argue that Northstar is not the owner of CSI's accounts receivable because this court's ruling in *Commercial Structures and Interiors* is the "Law of the Case" and because Northstar's desire to enforce CSI's conveyance of the accounts receivable constitutes a collateral attack upon this court's opinion in *Commercial Structures and Interiors*. These arguments were not asserted in Appellants' response to Northstar's motion for summary judgment; therefore, they are waived. *See* Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1; *McConnell*, 858 S.W.2d at 341. Even if the arguments were not waived, for the reasons set forth above, they are unpersuasive. We overrule the remainder of Appellants' second issue.

### VII. ALLMERICA LIFE INSURANCE POLICY

In their third issue, Appellants argue that the trial court erred by declaring Northstar the owner of all right, title, and interest to the proceeds of the Allmerica life

23

insurance policy.[12]   To the extent any of the Appellants have an interest in the disposition of the proceeds,[13] the summary judgment record demonstrates that Joyce and John Richard West executed an "Amended and Restated Assignment of Life Insurance Policy" that assigned to Northstar the Allmerica life insurance policy in the amount of $200,000 on the life of John Richard West.  The policy was one of the numerous instruments that secured the indebtedness from the JRW, CSI, and VBP promissory notes, which all fell into default.[14]   The assignment states in part, "**Assignor** [Joyce and John Richard West] **hereby assigns, transfers and sets over to Lender** [Northstar] . . . **the Policy** and all claims, options, privileges, rights, title and interest therein and thereunder . . . ." (emphasis in original).   The assignment further states,

> It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this Assignment and pass to [Northstar] by virtue hereof:
>
> a.     The sole right to collect from Insurer the net proceeds of the Policy when it becomes a claim by death or maturity.

---

[12] The trial court had ordered that the proceeds be paid into the court's registry.

[13] The assignment indicates that Joyce and John Richard West are the only assignors of the policy, but neither Joyce West, individually, nor John Richard West's estate are appellants to this appeal.

[14] In a July 28, 2003 letter addressed to Northstar, Allmerica acknowledged its receipt of the assignment.

24

John Richard West died in late April 2006. Northstar met its summary judgment burden to show its entitlement to the Allmerica life insurance policy proceeds.

Appellants argue that Northstar is not entitled to collect the Allmerica insurance proceeds because it does not have an insurable interest and because under the insurance code, the insurance policy is a "credit life insurance" policy and the assignment a part of a "credit transaction." None of these arguments were asserted in Appellants' response to Northstar's motion for summary judgment. Therefore, they cannot be raised on appeal as reasons to reverse the summary judgment. *See* Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1; *McConnell*, 858 S.W.2d at 341. Appellants also argue that Northstar is not entitled to the proceeds because, as argued under the second issue, Northstar has not shown that there is an amount of money due and owing on the promissory notes in excess of the $200,000 insurance policy. Our reasoning in Appellants' second issue regarding the indebtedness remains unchanged in the context of the third issue. We overrule Appellants' third issue.

## VIII. SANCTIONS

In the fourth issue, Ward argues that the trial court erred by awarding sanctions against him because he did not receive proper notice of the hearings on the motions for sanctions, the motions did not seek sanctions against him individually, and the order awarding sanctions was not entered until the final judgment was signed.

25

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

The trial court may impose an appropriate sanction for abuse of the discovery process. Tex. R. Civ. P. 215.3. Chapters 9 and 10 of the civil practice and remedies code and rule 13 of the rules of civil procedure allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). It is an abuse of discretion for the trial court to impose sanctions, however, when the sanctioned party has inadequate notice of the sanctions hearing. *See* Tex. R. Civ. P. 13 (requiring notice and a hearing), 215.3 (permitting imposition of sanctions after notice and hearing); Tex. Civ. Prac. & Rem. Code Ann. § 10.003 (Vernon 2002) (requiring notice of allegations and a reasonable opportunity to respond); *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 451 (Tex. App.—Fort Worth 2000, orig. proceeding) (reasoning that proceedings for sanctions must comport with due process, affording a party an adequate opportunity to be heard).

But lack of notice is an issue that can be waived. *See Low*, 221 S.W.3d at 618–19. The proper method to preserve a notice complaint is to bring the lack of

26

adequate notice to the attention of the trial court at the hearing and object to the hearing going forward or move for a continuance. *Id.*; *Dunavin v. Meador*, No. 02-07-00230-CV, 2008 WL 2780782, at *3 (Tex. App.—Fort Worth July 17, 2008, no pet.) (mem. op.) (holding argument regarding inadequate notice of sanctions hearing waived); *see Page v. Sartin*, No. 05-01-01710-CV, 2002 WL 1634478, at *2 (Tex. App.—Dallas July 24, 2002, no pet.) (not designated for publication) (holding argument regarding inadequate notice of sanctions hearing waived) (citing *Prade v. Helm*, 725 S.W.2d 525, 526–27 (Tex. App.—Dallas 1987, no writ)); *see also Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 817–18 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding sanctions arguments waived); *Clark v. Bres*, 217 S.W.3d 501, 514 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that appellant waived arguments regarding deficiencies in notice of sanctions because appellant rejected trial court's offer of a continuance).

The record shows that Northstar filed a motion for rule 215 sanctions on March 29, 2007. The motion contained a certificate of service indicating that the motion had been hand delivered to Ward and a fiat that a hearing on the motion had been set for April 5, 2007. Northstar also included a letter specifically stating that a hearing had been set for April 5, 2007. The hearing that had been set for April 5, 2007, was reset to May 18, 2007. Northstar advised Ward of the resetting in a letter dated April 11, 2007. According to the affidavit of Northstar's attorney, the parties, including Ward, appeared before the trial court on May 18, 2007, but the trial court

27

passed the cause and suggested that the remaining matters, including sanctions, be reset for June 11, 2007. Each attorney, including Ward, affirmed that he could attend the hearing on June 11, 2007. At a deposition on June 6, 2007, Northstar served Ward's associate, Frank Gannon, with another motion that Northstar had filed seeking sanctions under rule of civil procedure 13 and civil practice and remedies code section 10. Northstar's counsel sent an email to Ward advising him that the motion served on June 6, 2007, was also set for hearing on June 11, 2007.[15]

Ward did not appear at the June 11, 2007 hearing on Northstar's motions for sanctions. Instead, another attorney, Aden Vickers, appeared. At the beginning of the hearing, the following exchange occurred:

> Mr. Vickers: May it please the court. I'm A.L. Vickers. Mr. Ward is in court in Greenville today, cannot be here. I'll appear for the respondents to the motions on the sanctions.
>
> The Court: Okay. So you are ready to proceed on that. All right.

Northstar detailed the bases of its motions for sanctions, and Vickers responded. The trial court continued the hearing for June 19, 2007. On June 19, 2007, Vickers once again appeared, stating, "May it please the court. I believe I actually was replying at the time, and we ran out of time. I have just a few more remarks I would like to make." Vickers cross-examined Northstar's attorneys and offered further

---

[15] The June 6, 2007 notice states in relevant part, "As we discussed last Friday, the motion to compel/motion to strike/motion for sanctions served on Frank Gannon at the deposition today has been set and will be heard by Judge Gabriel at the hearing set for June 11 at 9:30 am in Judge Gabriel's court room."

argument. On October 15, 2009, the trial court announced its ruling via email, awarding sanctions against Ward.

As the record demonstrates, at no point during the June 11 or June 19, 2007 hearings did Vickers, who appeared in Ward's stead, bring to the trial court's attention the lack of adequate notice that Ward now complains of and object to the hearings going forward or move for a continuance. Rather, Vickers appeared and argued against the imposition of sanctions. Ward complained of the lack of notice in a motion for new trial, but that complaint was untimely. *See Low*, 221 S.W.3d at 618. We hold that Ward waived any complaint regarding the alleged lack of adequate notice of the hearings on Northstar's motions for sanctions. *See id*.; *see also* Tex. R. App. P. 33.1(a)(1). We overrule this part of the fourth issue.

Ward argues that the trial court abused its discretion by awarding sanctions against him because the motions did not seek sanctions against him as Appellants' attorney. Northstar moved for sanctions in part pursuant to rule 13 and civil practice and remedies code section 10. Rule 13 allows the trial court to impose an appropriate sanction upon the person who signed the complained-of pleading. Tex. R. Civ. P. 13. Similarly, rule 10 allows the trial court to impose a sanction on the person who signed the pleading or motion in violation of section 10.001. Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (Vernon 2002). The trial court sanctioned Ward because he filed claims in bad faith, made groundless allegations, and filed

29

frivolous motions.[16]  *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002).  Because Ward is the person who violated rule 13 and section 10 by filing claims in bad faith and making groundless allegations, the trial court was permitted to impose sanctions upon him as West's attorney, as expressly permitted by rule 13 and section 10.  *See generally Low v. State*, No. 02-03-00347-CV, 2005 WL 1120013, at *2 (Tex. App.—Fort Worth May 12, 2005, no pet.) (mem. op.) (holding that the trial court did not abuse its discretion by assessing sanctions against attorney even though motion did not expressly seek sanctions against him).  Further, as with Ward's notice argument, no objection was asserted at the hearings that the motions sought only sanctions against Ward's clients and not against Ward as attorney.  *See* Tex. R. App. P. 33.1(a)(1).  We overrule this part of the fourth issue.

Ward argues that the trial court abused its discretion by awarding sanctions against him because the order awarding sanctions was not entered until the final judgment was signed.  He supports this contention with a citation to caselaw reasoning that sanctions for alleged violations known to movants before trial are waived if a hearing and ruling are not secured before trial.  *See Finlay v. Olive*, 77

---

[16] The motions clearly complain of Ward's conduct during the litigation, and the June 11 and 19, 2007 hearings on the motions concerned Ward's conduct. Indeed, Northstar's counsel began his lengthy presentation on June 11 by stating, "May it please the court.  Your Honor, I have something that is very difficult for me to do today.  I'm here asking the court to impose very, very serious sanctions *against the lawyers* for the plaintiffs in this case."  [Emphasis added.]

S.W.3d 520, 525 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  In this case, the trial court conducted hearings on the motions for sanctions and advised the parties of its ruling months in advance of Northstar's filing its motion for summary judgment. We overrule the remainder of the fourth issue.[17]

## IX.  CONCLUSION

Having overruled all four of Appellants' issues, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

DELIVERED:  March 11, 2010

---

[17] To the extent Ward asserts other arguments in this issue, those inadequately briefed arguments are waived.  *See* Tex. R. App. P. 38.1(i).