COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-447-CV

 

 

JOYCE
WEST, AS TRUSTEE                                                          APPELLANTS

FOR THE WEST FAMILY
TRUST,

COMMERCIAL
STRUCTURES

AND INTERIORS,
INC., AND

LLOYD WARD

 

                                                             V.

 

NORTHSTAR FINANCIAL                                                                  APPELLEES

CORPORATION D/B/A

NORTHSTAR BANK OF
TEXAS,

TONY R. CLARK,
EDMOND S.

BRIGHT, MYRA
CROWNOVER,

ROBERT W. GENTRY,
KENT W.

KEY, JOSEPH S.
MULROY,

PATRICK D. O=BRIEN,
RONALD

REINKE, RONALD F.
SHERMAN,

AND RICHARD E.
SMITH

 

                                                       ------------

 

               FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








I. 
Introduction

In four issues, Appellants Joyce
West, as Trustee for the West Family Trust, Commercial Structures and
Interiors, Inc. (ACSI@), and Lloyd Ward appeal (1) the trial court=s order granting a motion for partial
summary judgment in favor of Appellees Northstar Financial Corporation d/b/a
Northstar Bank of Texas (ANorthstar@) and Tony R. Clark, Edmond S.
Bright, Myra Crownover, Robert W. Gentry, Kent W. Key, Joseph S. Mulroy,
Patrick D. O=Brien, Ronald Reinke, Ronald F.
Sherman, and Richard E. Smith (ANorthstar Officers and Directors@) and (2) the trial court=s final judgment granting in full a
second motion for summary judgment and awarding sanctions against Ward in favor
of Northstar.  We will affirm.

II.  Factual
and Procedural Background

Joyce and John Richard West were
officers, directors, or shareholders of CSI; Southfork Land LLC (ASouthfork@); Valley Business Park, Ltd. (AVBP@); JRW Holdings, Inc. (AJRW@); and Dakota Partners Ltd.(ADakota@) (collectively, the AWest entities@). 
In 2002 and 2003, CSI, JRW, and VBP acquired financing through several
loans from Northstar:  CSI entered into a loan agreement with
Northstar for a revolving line of credit up to $1,000,000 and executed a
promissory note payable to Northstar in the amount of $1,000,000; JRW executed
a promissory note payable to Northstar in the amount of $704,600; and VBP
executed a promissory note payable to Northstar in the amount of $550,000.








Northstar secured each promissory
note with multiple instruments of collateral. 
To secure the CSI promissory note, CSI granted Northstar a security
interest in, among other things, its accounts receivable, rights to payment of
any kind, and proceeds; John Richard West executed a Guaranty Agreement in
favor of Northstar guaranteeing CSI=s indebtedness under the promissory note; and Dakota executed
a Guaranty Agreement in favor of Northstar guaranteeing CSI=s indebtedness.  To secure the JRW promissory note, Southfork
executed a deed of trust, security agreement, and assignment of rents, leases,
incomes, and agreements in favor of Northstar to three tracts of land, and John
Richard West, Dakota, CSI, and Southfork each executed a Guaranty Agreement in
favor of Northstar guaranteeing JRW=s indebtedness.  To
secure VBP=s promissory note, VBP executed a
deed of trust, security agreement, and assignment of rents, leases, incomes,
and agreements in favor of Northstar to a single tract of land; John Richard
West executed a Guaranty Agreement in favor of Northstar guaranteeing VBP=s indebtedness; and both Joyce and
John Richard West executed an AAmended and Restated Assignment of
Life Insurance Policy@ assigning to Northstar an Allmerica
life insurance policy in the amount of $200,000 on the life of John Richard
West.  The deed of trust also secured the
JRW and CSI promissory notes, and the assignment of the Allmerica insurance
policy also secured all of the indebtedness owed by JRW and CSI to Northstar.








The CSI promissory note, the JRW
promissory note, and the VBP promissory note each fell into default.  Northstar had also agreed to cover several
overdrafts made by CSI in the amounts of $36,852, $341,375, and $5,758 and an
overdraft made by JRW in the amount of $152,845.  As of May 27, 2004, the West entities= indebtedness on the promissory
notes, including interest on the principal indebtedness and the secured amounts
representing the overdrafts, totaled approximately $2,396,137.








On or about May 27, 2004, Northstar
entered into a ACompromise Settlement Agreement and
Mutual Release@ (the AAgreement@) with the West entities.[2]  Under the Agreement, Northstar released the
West entities from personal liability under the loans for the indebtedness
resulting from the CSI, JRW, and VBP promissory notes.  The Agreement provided, however, that the
indebtedness and the collateral securing the debt would Aremain in full force and effect,@ thus surviving the release of the
West entities from personal liability. 
In exchange for agreeing to not pursue the West entities to satisfy the
indebtedness, Northstar received deeds in lieu of foreclosure conveying real
estate that was the subject of the deeds of trust used as collateral to secure
the JRW and VBP promissory notes; an assignment of all of CSI=s accounts receivable; a collateral
assignment of a Transamerica life insurance policy in the amount of $750,000
for a period of one year from May 27, 2004; and a release from all past,
present, and future claims by the West entities based on tort, contract, or any
other theory of recovery.

On July 12, 2004, CSI sued Liberty
Education Ministries, Inc. d/b/a Liberty Christian School (ALiberty@), alleging that Liberty had terminated a contract that it
had entered into with CSI after CSI had fully performed under the contract and
that Liberty had failed to pay CSI money owed. 
See Commercial Structures and Interiors, Inc. v. Liberty Educ.
Ministries, Inc., 192 S.W.3d 827, 829 (Tex. App.CFort Worth 2006, no pet.).  The trial court granted Liberty=s motion for summary judgment,
dismissing CSI=s claims against Liberty and
declaring that CSI had transferred all legal rights and causes of action
asserted by CSI in the litigation to Northstar and that Northstar was the owner
of the claims asserted by CSI in the litigation.  Id. at 830.  CSI appealed and argued in part that Athe trial court erred by construing
the [Agreement] as a present transfer and assignment of CSI=s claims against [Liberty] to
[Northstar] because the [Agreement] merely evidence[d] a future intent to
assign by executing additional documents.@  Id. at
832.  This court agreed, reasoning in
part as follows:








We hold that the
language in the [Agreement] unambiguously evidences an intent to assign CSI=s
accounts receivable to [Northstar] in the future and does not, standing alone,
effect a present transfer of the accounts receivable to the bank.  Appellees did not provide the trial court
with any evidence that the parties consummated the transactions contemplated in
the [Agreement], nor did they plead or prove an equitable assignment; thus,
there is no evidence that CSI ever completed the assignment of its accounts
receivable to [Northstar] that it agreed to in . . . the [Agreement].  Because there is no evidence in the summary
judgment record that the assignment was ever consummated, the trial court erred
by granting summary judgment in favor of Liberty as to CSI=s claims
against it and as to appellees= claims for declaratory judgment relief against
CSI.  We sustain CSI=s second
issue.

 

Id. at 834 (footnotes omitted).

 

John Richard West died in late April
2006.  On May 24, 2006, Joyce West, individually
and as Trustee for the West Family Trust, sued Northstar and the Northstar
Officers and Directors, alleging claims for breach of contract and tortious
interference with contract based on Northstar=s alleged failure and refusal to execute (1) a release
of the 2003 collateral assignment upon the Allmerica insurance policy and
(2) a release of the Transamerica insurance policy assignment, which
expired by its own terms in May 2005.  On
May 31, 2006, Northstar executed a release of the Transamerica insurance
policy.  In July 2006, West filed a
supplemental petition claiming that Northstar was improperly withholding CSI=s accounts receivable and alleging
claims for intentional infliction of emotional distress, fraud, conspiracy to
commit fraud, conspiracy to tortiously interfere with contract, tortious
interference with contract, and negligence.








Also in July 2006, the West entities
filed a APlea in Intervention,@ alleging claims against Northstar
and the Northstar Officers and Directors for fraud, conspiracy to tortiously
interfere with business relations, conspiracy to convert accounts receivable,
conversion, and negligent misrepresentation.[3]  The Intervenors claimed that pursuant to the Commercial
Structures and Interiors, Inc. case, Athe Fort Worth Court of Appeals held that CSI=s accounts receivable were not
assigned to Northstar@ and that Northstar was wrongfully
holding CSI=s accounts receivable.

After filing counterclaims for breach
of contract and for declaratory relief related to the Allmerica insurance
policy and CSI accounts receivable, Northstar and the Northstar Officers and
Directors filed a traditional and no-evidence motion for partial summary
judgment; Northstar and the Northstar Officers and Directors moved for summary
judgment on all of West=s and the Intervenors= affirmative claims, and Northstar
moved for summary judgment on its claim that it is entitled to the proceeds of
the Allmerica insurance policy.  After
Northstar filed the motion for partial summary judgment, West and the
Intervenors filed a first amended petition. 
As to the Northstar Officers and Directors, the trial court granted the
motion for summary judgment in its entirety, dismissing all claims against
them.  As to Northstar, the trial court
granted its motion for summary judgment on West=s and the Intervenors= claims of negligence, gross negligence, intentional
infliction of emotional distress, and conspiracy.  The trial court denied the remainder of
Northstar=s motion for summary judgment.













Northstar filed motions for rule 215,
rule 13, and civil practice and remedies code section 10 sanctions against
Ward, counsel for West and the Intervenors, which the trial court granted on
October 15, 2007.  West and the
Intervenors filed their second and third amended petitions before all of the
Intervenors except CSI nonsuited their claims against Northstar, and Northstar
amended its counterclaims as to the declaratory relief it sought.  Northstar thereafter filed a traditional and
no-evidence motion for summary judgment on West=s and the Intervenors= claims and on Northstar's claims for breach of contract and
for declaratory relief.[4]  The trial court granted the motion in full;
among other things, it dismissed all of the West=s and all of the Intervenors= claims; declared CSI, JRW, and VBP in default of the CSI,
JRW, and VBP promissory notes; declared the Agreement valid and enforceable;
declared that the indebtedness under the promissory notes survived the
Agreement=s execution; declared that the
indebtedness as of January 23, 2008, including interest and overdrafts, was
$2,912,853 and that the indebtedness as of May 27, 2004, including interest and
overdrafts, was $2,396,137; declared that the value of the real property
conveyed in lieu of foreclosure was $1,205,792; declared Northstar the owner of
CSI=s accounts receivable; and declared
Northstar the owner of the proceeds to the Allmerican insurance policy.  The trial court also included in the final
judgment its ruling awarding sanctions against Ward in the total amount of
$68,602.  This appeal followed.

III.  Northstar=s Motion to
Show Authority

Before addressing Appellants= four issues, we must address
Northstar=s motion pursuant to rule of civil
procedure 12 to require Appellants= counsel, Ward, to show authority to prosecute this
appeal.  Northstar contends that Ward
lacks authority to represent West and CSI on appeal because he withdrew as
counsel for West in April 2008, because the notice of appeal is ambiguous with
respect to the identity of the parties pursuing the appeal, and because of a
potential conflict of interest between Ward and West.  Northstar also requests that we dismiss the
appeal of West and CSI for want of jurisdiction.  We abated the appeal to allow the trial court
to conduct a hearing on the motion.  The
appeal being reinstated, and having reviewed the supplemental reporter=s record of the hearing on abatement
and relevant parts of the record, we deny Northstar=s motion requesting that the appeal
be dismissed for want of jurisdiction.[5]








IV.  Standard
of Review

In a summary judgment case, the issue
on appeal is whether the movant met the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We
review a summary judgment de novo.  Mann
Frankfort, 289 S.W.3d 848.

We take as true all evidence
favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002). 
We consider the evidence presented in the light most favorable to the
nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors
could, and disregarding evidence contrary to the nonmovant unless reasonable
jurors could not.  Mann Frankfort,
289 S.W.3d at 848.  We must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See
Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City
of Keller v. Wilson, 168 S.W.3d 802, 822B24 (Tex. 2005).  The
summary judgment will be affirmed only if the record establishes that the
movant has conclusively proved all essential elements of the movant=s cause of action or defense as a matter
of law.  City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).








V.  Motion for Partial Summary JudgmentCNorthstar Officers and
Directors

 

In their first issue, Appellants
argue that the trial court erred by granting the motion for partial summary
judgment in favor of the Northstar Officers and Directors on claims that were
not addressed in the motion for summary judgment.  Specifically, Appellants contend that West
filed her first amended original petition after Northstar and the Northstar
Officers and Directors filed their motion for partial summary judgment; that
the amended petition asserted causes of action for fraud in the inducement, negligent
misrepresentation, tortious interference, fraud, and fraudulent
misrepresentation that were not previously pleaded in the original and
supplemental petitions; and, consequently, that the trial court granted the
motion for partial summary judgment in favor of the Northstar Officers and
Directors on claims that were not addressed by the motion for partial summary
judgment.








Generally, a movant who does not
amend or supplement its pending motion for summary judgment to address newly
added claims is not entitled to summary judgment on those claims.  Blancett v. Lagniappe Ventures, Inc.,
177 S.W.3d 584, 592 (Tex. App.CHouston [1st Dist.] 2005, no
pet.).  In such a case, the portion of
the summary judgment purporting to be final must generally be reversed because
the judgment grants more relief than requested in the motion.  See id.  Exceptions apply to this rule, however, when
a previously filed no-evidence motion for summary judgment already challenges
an essential element of a later-added claim, when the movant has conclusively
proved or disproved a matter that would also preclude the unaddressed claim as
a matter of law, or when the unaddressed claim is derivative of the addressed
claim and the movant proved its entitlement to summary judgment on that
addressed claim.  Wilson v. Davis,
No. 01-06-00424-CV, 2009 WL 2526439, at *11 & n.13 (Tex. App.CHouston [1st Dist.] Aug. 14, 2009, no
pet.); Lampasas v. Spring Center, Inc., 988 S.W.2d 428, 436B37 (Tex. App.CHouston [14th Dist.] 1999, no pet.); Hayes
v. Vista Host, Inc., No. 03-08-00053-CV, 2009 WL 722288, at *5 (Tex. App.CAustin Mar. 20, 2009, no pet.) (mem.
op.).

Here, the Northstar Officers and
Directors moved for summary judgment on APlaintiff/Intervenors[>]@ claims for breach of contract,
tortious interference, fraud, negligence, gross negligence, negligent
misrepresentation, conversion, accounting, intentional infliction of emotional
distress, and conspiracy.  West, as the
Trustee for the West Family Trust, was the APlaintiff@ identified in the motion, and the
West entities were the AIntervenors@ identified in the motion. According
to the motion, Aall of these claims should be
dismissed on summary
judgment against all Defendants.@  [Emphasis
added.]  Contrary to Appellants= arguments, the motion sought summary
judgment on West=s claims for negligent
misrepresentation, tortious interference, and fraud.








Fraudulent inducement is a particular
species of fraud that arises only in the context of a contract, and the
elements of fraud must be established as they relate to an agreement between
the parties.  Haase v. Glazner, 62
S.W.3d 795, 798B99 (Tex. 2001).  Other than the pleading argument, which we
already addressed, West does not challenge the trial court=s order granting the motion for
partial summary judgment in favor of the Northstar Officers and Directors on
her claims for fraud.  Therefore, because
it is undisputed that the Northstar Officers and Directors conclusively
disproved West=s fraud claims, West cannot establish
her fraudulent inducement claim as a matter of law.  See id. (requiring that elements of
fraud be established in fraudulent inducement claim); Wilson, 2009 WL
2526439, at *11.  The trial court did not
err by granting the Northstar Officers and Directors= motion for partial summary judgment
on West=s claims for fraudulent inducement.








West made no distinction between her
claims for fraudulent misrepresentation and fraud; she grouped the identical
claims together, alleging identical facts in support of each claim.[6]  Also, like her fraudulent inducement claim,
West=s fraudulent misrepresentation claim
fails as a matter of law because it is undisputed that the Northstar Officers
and Directors conclusively disproved her fraud claims, and her fraudulent
misrepresentation claim shares elements with her fraud claim.  Compare Baribeau v. Gustafson, 107
S.W.3d 52, 58 (Tex. App.CSan Antonio 2003 (Tex. App.CSan Antonio 2003, pet. denied)
(listing elements of common law fraudulent misrepresentation), cert. denied,
543 U.S. 871 (2004), with DiBello v. Charlie Thomas Ford, Ltd., 288
S.W.3d 118, 122 (Tex. App.CHouston [1st Dist.] 2009, no pet.)
(listing elements of common law fraud); see Wilson, 2009 WL 2526439, at
*11.  The trial court did not err by granting
the Northstar Officers and Directors= motion for partial summary judgment on West=s claims for fraudulent
misrepresentation.  We overrule
Appellants= first issue.

VI. 
Indebtedness and CSI Accounts Receivable

In their second issue, Appellants
argue that the trial court erred by granting Northstar=s motion for summary judgment on its
requests for declarations that the indebtedness under the promissory notes
survived the Agreement=s execution and that Northstar is the
owner of CSI=s accounts receivable.  Under various theories, Appellants contend
that no indebtedness resulting from the CSI, JRW, and VBP promissory notes
remained after the Agreement=s execution because the Agreement
constituted a full settlement of all claims relating to the indebtedness and
because Northstar is not the owner of the CSI accounts receivable.

A.      Contract
Construction








Our primary concern when construing a
written contract is to ascertain the true intentions of the parties as
expressed in the instrument.  Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
We examine and consider the entire writing in an effort to harmonize and
give effect to all provisions of the contract so that none will be rendered
meaningless.  Id.  We presume that the parties to the contract
intend every clause to have some effect. 
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.
1996); XCO Prod. Co. v. Jamison, 194 S.W.3d 622, 627 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied). We give terms their plain, ordinary, and generally accepted meaning
unless the contract shows that the parties used them in a technical or
different sense.  Heritage Res.,
939 S.W.2d at 121.  In construing a
contract, we may not rewrite it nor add to its language, and we must weigh that
parties to a contract

are considered
masters of their own choices.  They are
entitled to select what terms and provisions to include in a contract before
executing it.  And, in so choosing, each
is entitled to rely upon the words selected to demarcate their respective
obligations and rights. In short, the parties strike the deal they
choose to strike and, thus, voluntarily bind themselves in the manner they
choose.

 

Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex. App.CAmarillo 2000, no pet.).

B.      The
Agreement

Relevant provisions of the Agreement
provide as follows:

I.

BACKGROUND

 

WHEREAS,
VBP executed that certain [p]romissory [n]ote dated July 17, 2003 in the
original principal amount of $550,000.00 and payable to the order of
[Northstar] . . . ;

 

WHEREAS,
JRW executed that certain promissory note dated January 24, 2003, in the principal
amount of $704,600.00 and payable to the order of [Northstar] . . . ;

 

WHEREAS,
CSI executed that certain promissory note dated December 13, 2002, in the
principal amount of $1,000,000.00 and payable to the order of [Northstar] . . .
;

 








WHEREAS,
the VBP Note, the JRW Note and the CSI Note (hereinafter, the AIndebtedness@) is
secured by certain real property situated in Denton County, Texas . . . (the AProperty@) . . .
;

 

WHEREAS,
the Indebtedness is guaranteed in whole or in part by VBP, the Wests [John
Richard West and Joyce West], Dakota, JRW, CSI, and Southfork . . . ;

 

.
. . .

 

WHEREAS,
the Indebtedness is in default and the Property has been posted for foreclosure
sale on June 1, 2004;

 

.
. . .

 

II.

AGREEMENT

 

1.       Conveyances to [Northstar]:  The West Entities agree to convey or cause
to be conveyed to [Northstar] . . . all of the land situated in Denton County,
Texas, described in the Schedule AA,@ attached hereto . . . .[7]  Further, CSI
agrees to assign to [Northstar] all of its right, title and interest in and to
all of its accounts receivable and all rights to payment of any kind.

 








2.       Consideration.  Subject to the satisfaction by the West
Entities of the conditions contained herein, [Northstar] agrees to accept the
conveyance of the Properties in full, final and complete settlement of any and
all claims relating to personal liability of the West Entities with respect to
the Indebtedness.  The West Entities
agree to convey the Properties to [Northstar] in consideration of such accord
and satisfaction.  The West Entities
jointly and severally represent that each of them has made an independent
determination of the fair market value of the Properties and as a result
thereof, each of them has concluded that:  (a) the amount of
the Indebtedness substantially exceeds the fair market value of the Properties;
(b) the Properties are unable to generate sufficient income to repay the
Indebtedness in accordance with the terms of the Loan Documents; and
(c) the consideration to be received by the West Entities pursuant to this
agreement represents the payment by [Northstar] of full, fair and adequate
consideration to the West Entities.

 

3.       Closing Date.  The transactions contemplated by this
agreement will be consummated on or before 5:00 P.M. on Thursday, May 27, 2004
(the AClosing Date@) . . . .

 

4.       Conveyance Documents.  On the Closing Date, the West Entities will
deliver or cause to be delivered to [Northstar] the following
items . . . :  (a) Special
Warranty Deed-in-Lieu of Foreclosure for the
Properties . . . ; (b) an Assignment of the Life
Insurance Policies, specifically, the Transamerica Life Insurance Company
Policy No. 4178765 in the amount of $750,000.00 on the life of John Richard
West for a period of one (1) year from the date hereof . . . ;
(c) the Notice Letter to the account debtors of CSI attached hereto as
Schedule AF@ . . . .

 

5.       Nonrecourse Liability of Indebtedness.  The West Entities are hereby released from
all personal liability under the Indebtedness to the extent such release does
not operate to invalidate the liens created of the Deed of Trust in the
collateral described therein.  It
is the intent of the Parties that the Indebtedness shall remain in full force
and effect and fully secured by the collateral identified in the Loan Documents. . . .

 

6.       Release of [Northstar].  Effective on the Closing Date and only if the
transactions contemplated by this agreement are consummated, the West
Entities . . . shall completely and generally
release . . . and forever discharge
[Northstar] . . . of and from any and all past, present, and
future claims, [and] . . . causes of actions . . . whatsoever
based on tort, contract, or any other theory of recovery . . . which any West
[Entities] ever jointly or individually had, . . . or [will] have against
[Northstar] . . . .

 

.
. . .








11.     Representation of Comprehension of
Documents:  In entering into this
Agreement, each Party represents that it has relied upon the legal advice of an
attorney who is the attorney of his or its own choice, and that the terms of
the Agreement have been completely read by the Party, and that the Party fully
understands and voluntarily accepts the terms of this Agreement. . . .

 

.
. . .

 

15.     Entire Agreement:  This Agreement contains the entire agreement
between [Northstar] and the West Entities with regard to the matters set forth
in this Agreement.

 

a.       THERE
ARE NO OTHER PROMISES, UNDERSTANDINGS, REPRESENTATIONS, WARRANTIES, COVENANTS,
OR AGREEMENTS, VERBAL OR OTHERWISE, IN RELATION THERETO BETWEEN THE BANK AND
THE WEST ENTITIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

 

[Emphasis
added.]

 

C.      Indebtedness








The plain and unambiguous language of
the Agreement demonstrates that in exchange for deeds in lieu of foreclosure,
an assignment of all of CSI=s accounts receivable, a collateral
assignment of the Transamerica life insurance policy, and a release from all
claims by the West entities, Northstar agreed to release the West entities from
personal liability under the loans for the indebtedness.  Contrary to Appellants= interpretation of the Agreement,
Northstar=s release of the West entities from
personal liability for the indebtedness did not extinguish or release the entirety
of the indebtedness under the promissory notes because (1) that is not what the
Agreement states and (2) the parties to the Agreement specifically intended
that the indebtedness Aremain in full force and effect and
fully secured by the collateral.@  By releasing the West
entities from only personal liability for the indebtedness, Northstar agreed
that, with the exception of the assets conveyed in the Agreement, it could not
reach any of the West entities= assets to satisfy the indebtedness,
which remained in full force and effect and fully secured by the
collateral.  In other words, by agreeing
to not pursue the West entities to satisfy the indebtedness (ANonrecourse Liability@), Northstar limited the indebtedness
remaining after accepting the assets conveyed in the Agreement to the value of
the collateral securing the debt. 
Accordingly, the Agreement did not constitute a full and final settlement
of the entirety of the indebtedness under the CSI, JRW, and VBP promissory
notes.  Rather, under the terms of the
Agreement, the indebtedness resulting from the promissory notes survived the
Agreement=s execution.








To the extent Appellants mean to
argue that no indebtedness remained after the Agreement=s execution because the value of the
properties conveyed in lieu of foreclosure exceeded the total
indebtedness (thus challenging the declaration that the value of the properties
conveyed in lieu of foreclosure was $1,205,792), this argument was not asserted
by Appellants in response to Northstar=s motion for summary judgment as an issue expressly
precluding summary judgment.[8]  Thus, Appellants may not raise this argument
for the first time on appeal as a reason to reverse the summary judgment.  See Tex. R. Civ. P. 166a(c) (providing
that issues not expressly presented to the trial court by written motion,
answer, or other response shall not be considered on appeal as grounds
for reversal); Tex. R. App. P. 33.1 (requiring that as a prerequisite for
presenting a complaint for appellate review, record must show that the
complaint was made to trial court by timely request, objection, or motion); McConnell
v. Southside ISD, 858 S.W.2d 337, 341 (Tex. 1993); City of Houston,
589 S.W.2d at 677B78.








Even if Appellants had raised this
argument in the trial court, it fails. 
First, the parties expressly agreed that Athe amount of the Indebtedness substantially exceeds the fair
market value of the Properties [the land conveyed in lieu of foreclosure].@ 
Thus, Appellants= argument is foreclosed by the
unambiguous terms of the Agreement. 
Further, Northstar included as part of its summary judgment evidence the
affidavits of Judy Leveridge, Northstar=s Executive Vice President and Chief Risk Officer, and Ross
Helbing, a qualified appraiser of improved and unimproved commercial
property.  Helbing opined in his
affidavit that as of May 27, 2004, the fair market value of the properties
transferred to Northstar in lieu of foreclosure totaled $3,432,000.  Leveridge stated in her affidavit that A[t]wo of the properties subject to
the deeds in lieu of foreclosure had first liens which Northstar was required
to pay off.@[9] 
These amounts were $2,051,389 and $174,819.  The total equity Northstar received from the
properties transferred in lieu of foreclosure thus totaled $1,205,792 (fair
market value less liens).  Applied to the
indebtedness as of May 27, 2004 ($2,396,137), debt in the amount of $1,190,345
remained.[10]

Appellants additionally argue that
the Agreement eliminated the indebtedness and that there are no amounts due and
owing because a 1099 issued to VBP for tax year 2004 shows figures inconsistent
with those in the final judgment, property code section 51.006 somehow applies
to their benefit, and the doctrine of Amerger@ operated to eliminate the
indebtedness.  Like the previous
argument, none of these arguments were asserted in Appellants= response to Northstar=s motion for summary judgment.[11]  Accordingly, they may not be urged for the
first time on appeal as grounds to reverse the summary judgment.  See Tex. R. Civ. P. 166a(c); Tex. R.
App. P. 33.1; McConnell, 858 S.W.2d at 341.  We overrule this part of Appellants= second issue.

D.      CSI=s Accounts Receivable








In Commercial Structures and
Interiors, this court held that the Agreement evidenced an intent to assign
CSI=s accounts receivable to Northstar
but that the summary judgment record did not demonstrate that the assignment of
CSI=s accounts receivable was ever
consummated.  192 S.W.3d at 834.  In addition to the plain language of the
Agreement, the court arrived at this conclusion primarily by observing that the
portion of the Agreement entitled AConveyance Documents@ required the West entities to deliver a notice letter to CSI=s account debtors evidencing the CSI
accounts receivable Aconveyance,@ and the court stated in a footnote
immediately following this observation that A[t]he [Agreement] states that the form of the letter is
attached as [Schedule] F, but the copy of the [Agreement] in the record does
not contain such an exhibit or letter form as an attachment.@ 
Id.  Thus, there was no
evidence that CSI had completed the assignment of its accounts receivable to
Northstar.

Unlike the summary judgment record in
Commercial Structures and Interiors that was missing the evidence that CSI
had assigned its accounts receivable to Northstar, the summary judgment record
in this appeal does contain the notice letter intended for CSI=s account debtors that is attached to
the Agreement as Schedule F.  The letter
is signed by John Richard West and states as follows:

This letter is to
inform you that Commercial Structures and Interiors, Inc. has transferred
all of its right, title and interest in and to all accounts receivable and
future payments due to Commercial Structures and Interiors, Inc. by your company
to Northstar Bank of Texas[.] 
Accordingly, you are hereby directed to forward all future payments due
to Commercial Structures and Interiors, Inc. under our contract with you,
directly to Northstar Bank of Texas, at the address provided below.  [Emphasis added.]

 








Accordingly, in light of (a) the Agreement=s unambiguous language providing that
ACSI agrees to assign to [Northstar]
all of its right, title and interest in and to all of its accounts receivable
and all rights to payment of any kind@ and (b) the letter attached to the Agreement as
Schedule F providing that ACommercial Structures and Interiors,
Inc. has transferred all of its right, title and interest in and to all
accounts receivable and future payments due to Commercial Structures and
Interiors, Inc. by your company to Northstar,@ Northstar met its summary judgment burden to show that it is
the owner of CSI=s accounts receivable.  [Emphasis added.]

Appellants argue that Northstar is
not the owner of CSI=s accounts receivable because this
court=s ruling in Commercial Structures
and Interiors is the ALaw of the Case@ and because Northstar=s desire to enforce CSI=s conveyance of the accounts
receivable constitutes a collateral attack upon this court=s opinion in Commercial Structures
and Interiors.  These arguments were
not asserted in Appellants= response to Northstar=s motion for summary judgment;
therefore, they are waived.  See Tex.
R. Civ. P. 166a(c); Tex. R. App. P. 33.1; McConnell, 858 S.W.2d at
341.  Even if the arguments were not
waived, for the reasons set forth above, they are unpersuasive.  We overrule the remainder of Appellants= second issue.

VII.  Allmerica
Life Insurance Policy








In their third issue, Appellants
argue that the trial court erred by declaring Northstar the owner of all right,
title, and interest to the proceeds of the Allmerica life insurance policy.[12]  To the extent any of the Appellants have an
interest in the disposition of the proceeds,[13]
the summary judgment record demonstrates that Joyce and John Richard West
executed an AAmended and Restated Assignment of
Life Insurance Policy@ that assigned to Northstar the
Allmerica life insurance policy in the amount of $200,000 on the life of John
Richard West.  The policy was one of the
numerous instruments that secured the indebtedness from the JRW, CSI, and VBP
promissory notes, which all fell into default.[14]  The assignment states in part, AAssignor [Joyce and John Richard West] hereby
assigns, transfers and sets over to Lender
[Northstar] . . . the Policy and all claims,
options, privileges, rights, title and interest therein and
thereunder . . . .@ (emphasis in original). 
The assignment further states,

It
is expressly agreed that, without detracting from the generality of the
foregoing, the following specific rights are included in this Assignment and
pass to [Northstar] by virtue hereof: 

 

a.       The sole right to collect from Insurer
the net proceeds of the Policy when it becomes a claim by death or maturity.

 

John Richard West died in late April 2006.  Northstar met its summary judgment burden to
show its entitlement to the Allmerica life insurance policy proceeds.








Appellants argue that Northstar is
not entitled to collect the Allmerica insurance proceeds because it does not
have an insurable interest and because under the insurance code, the insurance
policy is a Acredit life insurance@ policy and the assignment a part of
a Acredit transaction.@ 
None of these arguments were asserted in Appellants= response to Northstar=s motion for summary judgment.  Therefore, they cannot be raised on appeal as
reasons to reverse the summary judgment. 
See Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1; McConnell,
858 S.W.2d at 341.  Appellants also argue
that Northstar is not entitled to the proceeds because, as argued under the
second issue, Northstar has not shown that there is an amount of money due and
owing on the promissory notes in excess of the $200,000 insurance policy.  Our reasoning in Appellants= second issue regarding the
indebtedness remains unchanged in the context of the third issue.  We overrule Appellants= third issue.

VIII. 
Sanctions

In the fourth issue, Ward argues that
the trial court erred by awarding sanctions against him because he did not
receive proper notice of the hearings on the motions for sanctions, the motions
did not seek sanctions against him individually, and the order awarding
sanctions was not entered until the final judgment was signed.








We review a trial court=s ruling on a motion for sanctions
for an abuse of discretion.  Cire v.
Cummings, 134 S.W.3d 835, 838 (Tex. 2004). 
A trial court abuses its discretion when it acts in an arbitrary or
unreasonable manner or when it acts without reference to any guiding rules or
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).

The trial court may impose an
appropriate sanction for abuse of the discovery process.  Tex. R. Civ. P. 215.3.  Chapters 9 and 10 of the civil practice and
remedies code and rule 13 of the rules of civil procedure allow a trial court
to sanction an attorney or a party for filing motions or pleadings that lack a
reasonable basis in fact or law.  Low
v. Henry, 221 S.W.3d 609, 614 (Tex. 2007). 
It is an abuse of discretion for the trial court to impose sanctions,
however, when the sanctioned party has inadequate notice of the sanctions
hearing.  See Tex. R. Civ. P. 13
(requiring notice and a hearing), 215.3 (permitting imposition of sanctions
after notice and hearing); Tex. Civ. Prac. & Rem. Code Ann. ' 10.003 (Vernon 2002) (requiring
notice of allegations and a reasonable opportunity to respond); In re
Acceptance Ins. Co., 33 S.W.3d 443, 451 (Tex. App.CFort Worth 2000, orig. proceeding)
(reasoning that proceedings for sanctions must comport with due process,
affording a party an adequate opportunity to be heard).








But lack of notice is an issue that
can be waived.  See Low, 221
S.W.3d at 618B19. 
The proper method to preserve a notice complaint is to bring the lack of
adequate notice to the attention of the trial court at the hearing and object
to the hearing going forward or move for a continuance.  Id.; Dunavin v. Meador, No.
02-07-00230-CV, 2008 WL 2780782, at *3 (Tex. App.CFort Worth July 17, 2008, no pet.) (mem. op.) (holding
argument regarding inadequate notice of sanctions hearing waived); see Page
v. Sartin, No. 05-01-01710-CV, 2002 WL 1634478, at *2 (Tex. App.CDallas July 24, 2002, no pet.) (not
designated for publication) (holding argument regarding inadequate notice of
sanctions hearing waived) (citing Prade v. Helm, 725 S.W.2d 525, 526B27 (Tex. App.CDallas 1987, no writ)); see also
Scott Bader, Inc. v. Sandstone Prods., Inc., 248 S.W.3d 802, 817B18 (Tex. App.CHouston [1st Dist.] 2008, no pet.)
(holding sanctions arguments waived); Clark v. Bres, 217 S.W.3d 501, 514
(Tex. App.CHouston [14th Dist.] 2006, pet.
denied) (holding that appellant waived arguments regarding deficiencies in
notice of sanctions because appellant rejected trial court=s offer of a continuance).








The record shows that Northstar filed
a motion for rule 215 sanctions on March 29, 2007.  The motion contained a certificate of service
indicating that the motion had been hand delivered to Ward and a fiat that a
hearing on the motion had been set for April 5, 2007.  Northstar also included a letter specifically
stating that a hearing had been set for April 5, 2007.  The hearing that had been set for April 5, 2007,
was reset to May 18, 2007.  Northstar
advised Ward of the resetting in a letter dated April 11, 2007.  According to the affidavit of Northstar=s attorney, the parties, including
Ward, appeared before the trial court on May 18, 2007, but the trial court
passed the cause and suggested that the remaining matters, including sanctions,
be reset for June 11, 2007.  Each
attorney, including Ward, affirmed that he could attend the hearing on June 11,
2007.  At a deposition on June 6, 2007,
Northstar served Ward=s associate, Frank Gannon, with
another motion that Northstar had filed seeking sanctions under rule of civil
procedure 13 and civil practice and remedies code section 10.  Northstar=s counsel sent an email to Ward advising him that the motion
served on June 6, 2007, was also set for hearing on June 11, 2007.[15]

Ward did not appear at the June 11,
2007 hearing on Northstar=s motions for sanctions.  Instead, another attorney, Aden Vickers,
appeared.  At the beginning of the
hearing, the following exchange occurred:

Mr. Vickers:  May it please the court.  I=m A.L. Vickers. 
Mr. Ward is in court in Greenville today, cannot be here.  I=ll appear for the respondents to the motions on the
sanctions.

 

The Court:  Okay. 
So you are ready to proceed on that. 
All right.

 

Northstar detailed the bases of its motions for sanctions,
and Vickers responded.  The trial court
continued the hearing for June 19, 2007. 
On June 19, 2007, Vickers once again appeared, stating, AMay it please the court.  I believe I actually was replying at the
time, and we ran out of time.  I have just
a few more remarks I would like to make.@  Vickers
cross-examined Northstar=s attorneys and offered further
argument.  On October 15, 2009, the trial
court announced its ruling via email, awarding sanctions against Ward.








As the record demonstrates, at no
point during the June 11 or June 19, 2007 hearings did Vickers, who appeared in
Ward=s stead, bring to the trial court=s attention the lack of adequate
notice that Ward now complains of and object to the hearings going forward or
move for a continuance.  Rather, Vickers
appeared and argued against the imposition of sanctions.  Ward complained of the lack of notice in a
motion for new trial, but that complaint was untimely.  See Low, 221 S.W.3d at 618.  We hold that Ward waived any complaint
regarding the alleged lack of adequate notice of the hearings on Northstar=s motions for sanctions.  See id.; see also Tex. R. App.
P. 33.1(a)(1).  We overrule this part of
the fourth issue.








Ward argues that the trial court
abused its discretion by awarding sanctions against him because the motions did
not seek sanctions against him as Appellants= attorney.  Northstar
moved for sanctions in part pursuant to rule 13 and civil practice and remedies
code section 10.  Rule 13 allows the
trial court to impose an appropriate sanction upon the person who signed the
complained-of pleading.  Tex. R. Civ. P.
13.  Similarly, rule 10 allows the trial
court to impose a sanction on the person who signed the pleading or motion in
violation of section 10.001.  Tex. Civ.
Prac. & Rem. Code Ann. ' 10.004(a) (Vernon 2002).  The trial court sanctioned Ward because he
filed claims in bad faith, made groundless allegations, and filed frivolous
motions.[16]  See Tex. R. Civ. P. 13; Tex. Civ.
Prac. & Rem. Code Ann. ' 10.001 (Vernon 2002).  Because Ward is the person who violated rule
13 and section 10 by filing claims in bad faith and making groundless
allegations, the trial court was permitted to impose sanctions upon him as West=s attorney, as expressly permitted by
rule 13 and section 10.  See generally
Low v. State, No. 02-03-00347-CV, 2005 WL 1120013, at *2 (Tex. App.CFort Worth May 12, 2005, no pet.)
(mem. op.) (holding that the trial court did not abuse its discretion by
assessing sanctions against attorney even though motion did not expressly seek
sanctions against him).  Further, as with
Ward=s notice argument, no objection was
asserted at the hearings that the motions sought only sanctions against Ward=s clients and not against Ward as
attorney.  See Tex. R. App. P.
33.1(a)(1).  We overrule this part of the
fourth issue.








Ward argues that the trial court
abused its discretion by awarding sanctions against him because the order
awarding sanctions was not entered until the final judgment was signed.  He supports this contention with a citation
to caselaw reasoning that sanctions for alleged violations known to movants
before trial are waived if a hearing and ruling are not secured before
trial.  See Finlay v. Olive, 77
S.W.3d 520, 525 (Tex. App.CHouston [1st Dist.] 2002, no
pet.).  In this case, the trial court
conducted hearings on the motions for sanctions and advised the parties of its
ruling months in advance of Northstar=s filing its motion for summary judgment.  We overrule the remainder of the fourth
issue.[17]

IX.  Conclusion

Having overruled all four of
Appellants= issues, we affirm the trial court=s judgment.

 

BILL
MEIER

JUSTICE

 

PANEL:  LIVINGSTON,
MCCOY, and MEIER, JJ.

DELIVERED:  March 11,
2010











[1]See Tex. R.
App. P. 47.4.





[2]The West Family Trust was not a party to the
Agreement.





[3]Unlike subsequent filings by the Intervenors, this
filing does not name Dakota as an intervenor.





[4]Because the motion for summary judgment contained in
the record bears a file mark that is dated after the trial court signed its
order granting the motion for summary judgment, we abated the appeal for the
trial court to conduct a hearing to determine what constitutes an accurate copy
of the motion for summary judgment filed on February 15, 2008, the date
Northstar claims to have filed the motion. 
See Tex. R. App. P. 34.5(e). 
The trial court entered a finding of fact that the copy of the motion
for summary judgment admitted as Exhibit A1@ at the abatement hearing, now included as a
supplement to the record, constitutes an accurate copy of the motion for
summary judgment filed on February 15, 2008. 
See Nguyen v. Dallas Morning News, L.P., No. 02-06-00298-CV, 2008
WL 2511183, at *3 (Tex. App.CFort Worth June 19, 2008, no pet.) (mem. op.) (AA
document is >filed= when it is delivered or tendered to, or otherwise put
under the custody or control of, the court=s clerk.  This
is true regardless of whether the document is file-stamped.@).





[5]To the extent Northstar seeks further relief by way of
its motion to show authority, it is denied.





[6]West asserted three Acounts@ of AFraud and Fraudulent Misrepresentation@ in the
first amended original petition.





[7]The properties identified in Schedule AA@ include
several tracts of real estate that were the subject of the deeds of trust used
as collateral to secure the JRW and VBP promissory notes.





[8]Appellants only argued that the Agreement Awas a
complete release of all indebtedness of the Plaintiff and Intervenors from any
allegations of debt owed to the Bank.@





[9]Northstar confirmed at oral argument that it had paid
off the liens.





[10]The deficiency is even higher when applying the
figures to the indebtedness as of January 23, 2008, which was $2,912,853.





[11]As candidly pointed out by Northstar, Appellants
mentioned in their response to Northstar=s motion for summary judgment that Northstar had Aacknowledged
receiving value in excess of the sums indicated in the recitals to the
agreement as evidenced by a IRS form 1099,@ but this statement was made in the context of
addressing the consideration given in the Agreement, and Appellants did not
argue, as they do here on appeal, that the value of the properties exceeded the
indebtedness.





[12]The trial court had ordered that the proceeds be paid
into the court=s registry.





[13]The assignment indicates that Joyce and John Richard
West are the only assignors of the policy, but neither Joyce West,
individually, nor John Richard West=s estate are appellants to this appeal.





[14]In a July 28, 2003 letter addressed to Northstar,
Allmerica acknowledged its receipt of the assignment.





[15]The June 6, 2007 notice states in relevant part, AAs we
discussed last Friday, the motion to compel/motion to strike/motion for
sanctions served on Frank Gannon at the deposition today has been set and will
be heard by Judge Gabriel at the hearing set for June 11 at 9:30 am in Judge
Gabriel=s court room.@





[16]The motions clearly complain of Ward=s
conduct during the litigation, and the June 11 and 19, 2007 hearings on the
motions concerned Ward=s conduct. 
Indeed, Northstar=s counsel began his lengthy presentation on June 11 by
stating, AMay it please the court.  Your Honor, I have something that is very
difficult for me to do today.  I=m here
asking the court to impose very, very serious sanctions against the lawyers for
the plaintiffs in this case.@  [Emphasis
added.]





[17]To the extent Ward asserts other arguments in this
issue, those inadequately briefed arguments are waived.  See Tex. R. App. P. 38.1(i).